## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21592-Civ-MORENO/TORRES

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

AURA FINANCIAL SERVICES, INC.,
RONALD E. HARDY, JR.,
PETER C. DUNNE,
QAIS R. BHAVNAGARI,
DIPIN MALLA,
SANDEEP SINGH, and
RAYMOND DUNNE,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Final Judgment Ordering Injunctive Relief, Disgorgement, Prejudgment Interest, and a Civil Penalty Against Defendant Aura Financial Services, Inc. [D.E. 80].  No response in opposition was filed to the motion within the time provided by S.D. Fla. Local R. 7.1 or in the intervening period.  Accordingly, the motion is ripe for disposition.

### I.  BACKGROUND AND FINDINGS

The Complaint [D.E. No. 1] in this matter was filed on June 11, 2009. On October 8, 2009, the Court entered a Consent Judgment against Aura [D.E. 58], permanently enjoining it from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of

1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Consent Judgment specified that Aura shall pay disgorgement of ill-gotten gains, prejudgment interest thereon calculated from April 30, 2009 based on the rate of interest set forth in 26 U.S.C. § 6621(a)(2) and a civil penalty, with the Court to determine the amounts upon motion of the Commission. [D.E. 58, ¶ III]. The Consent Judgment also specified that, for purposes of such a motion, the allegations of the Complaint shall be accepted as and deemed true by the Court, and the Court may determine the issues raised on the basis of affidavits, declarations, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

Pursuant to that consent judgment, and the record submitted in support of the motion seeking to determine those amounts, the Court has reviewed the pending motion, the record evidence submitted in support of a final judgment in favor of Plaintiff, and the record as a whole, none of which has been disputed by Aura. The record shows that from approximately October 2005 through at least April 2009, Aura, a Birmingham, Alabama based broker-dealer registered with the Commission, and five of its registered representatives, Ronald E. Hardy, Jr. ("Hardy"), Peter C. Dunne ("Dunne"), Qais R. Bhavnagari ("Bhavnagari"), Sandeep Singh ("Singh"), and Raymond Rapaglia ("Rapaglia") (collectively, "Individual Defendants"), used fraudulent sales practices to induce customers to open and fund Aura brokerage accounts. (D.E. No. 1, ¶ 1).

Specifically, Aura and the Individual Defendants used fraudulent sales practices to induce customers to open and fund Aura brokerage accounts. [D.E. 1 ¶22]. Most

customers had, in fact, investment objectives of "growth" or "capital appreciation," with a corresponding risk tolerance of "moderate" to "conservative." [*Id.* ¶24]. However, in at least some cases relied upon by the Commission, the Aura representative marked more aggressive investment objectives or risk tolerances on the customers' new account applications. [*Id.*] Thereafter, the customers' accounts were traded inconsistently with their objectives or risk tolerances. [*Id.* ¶25]. Many customers were unsophisticated in securities trading, and all relied solely on the respective registered representative for the account to make investment decisions for their account. The relevant registered representatives exercised de facto control over the customers' accounts. None of the customers understood the total transaction costs they were incurring through their trading with Aura. [*Id.* ¶¶26-28].

Aura controlled Hardy, Dunne, Bhavnagari, Singh, and Rapaglia, directly or indirectly, at all relevant times, and was required to supervise each of them with a view to preventing violations of law. [*Id.* ¶156]. Nominally independent contractors, they acted as Aura's agents or employees. They acted within the scope of their employment or work for Aura at all relevant times. Aura gave them authority to act on its behalf in interactions with customers. They had apparent authority to act on behalf of Aura. [*Id.* ¶¶157-160].

Aura maintained at least two periodic reports, provided to management personnel, that showed that certain accounts had both high turnover ratios and break even percentages: the "Largest 500 Accounts Report" (ranked by commissions generated) and a "Monthly Active Account Report." Thus, Aura was aware of high

turnover in many accounts, including those of the customers discussed below.  Aura had additional reasons to supervise Hardy, Dunne, Bhavnagari, Singh, and Rapaglia, as it received customer complaints concerning each of them. [*Id.*  ¶¶162, 165-172].

Aura's response to apparent churning was to send to the holder of each potentially churned account an "Active Account Letter."  The letter asked the account owner to sign it and return it to the firm.  Aura knew that most of the active account letters it sent out were never signed by the account owner and returned, but took no reasonable steps to follow up with its customers when they were not. [*Id.*  ¶¶173-74].

As an illustration, for one customer, between May and July 2008, Aura's agent Hardy executed a total of 50 buy and sell transactions in the account.  By the end of July, the customer's account had a negative balance, having lost over $38,000 including commission charges and fees of approximately $29,000.  The customer's joint account was excessively traded, and the account had an annualized turnover rate of 199 and a cost to equity ratio of over 566%. [*Id.* ¶¶41-43].

Other customers, whose accounts were managed by Hardy and the other Individual Defendants acting under Aura's direction and control, lost significant funds from their accounts through similar transactions.  Aura compensated its registered representatives as set forth in "Independent Contractors Agreements."  Each Agreement specified the percentage of the commission charged by Aura for all products which the representative was entitled to receive.

For the time periods, customers, and transactions described in the record, Aura collected $947,672 in commissions.  Of those commissions, $648,529 were paid out to

the registered representatives.   Accordingly, Aura retained $299,143 of the commissions.  Additionally, Aura collected $49,694 in transaction fees for the time periods, customers, and transactions that were involved.  Thus, Aura retained a total of $348,837 in additional compensation flowing from the conduct and transactions discussed above.  Meanwhile, Aura's customers lost a total of $3,366,735 over the same time period.

## II.  ANALYSIS

### A.   *Disgorgement of Ill-gotten Gains*

The SEC is "entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains."  *S.E.C. v. Calvo,* 378 F.3d 1211, 1217 (11th Cir. 2004).  The disgorged amount must be "causally connected to the violation," but it need not be "figured with exactitude." *Id.* Where disgorgement calculations cannot be exact, "any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.*

Aura received ill-gotten gains from its violations through the receipt of commissions and transaction fees from its customers from the conduct pleaded in the Complaint.  Aura received only a percentage of each commission, with the percentage being set by contract with each of its representatives.  Aura retained net commissions of at least $299,143 after its payouts to representatives for the conduct detailed in the Complaint, along with transaction fees of $49,694, a total of $348,837.  Thus, the Court finds that the SEC correctly argues that Aura should be ordered to pay disgorgement of $348,837, plus prejudgment interest in the amount of $15,318.83.

### B.   *Civil Penalties*

Based on these record facts, the Commission also asks that the Court impose civil monetary penalties of up to $650,000 for the statutes violated under section 20(d) of the Securities Act of 1933 and section 21(d)(3) of the Securities Exchange Act of 1934.  The decision to impose a penalty, and the amount of any such penalty, is a matter within the discretion of the Court.  A "third tier" civil penalty for violations by a person of up to the greater of $650,000 or the amount of pecuniary gain to the defendant as a result of the violation may be imposed when any provision of the Securities Act or the Exchange Act is violated, if the violation involved fraud or deceit and the violation resulted in substantial losses or created a significant risk of substantial losses to other persons.  *See* 17 C.F.R. § 201.1003.  The Commission's request is based on the fact the victims of Aura's fraudulent conduct suffered losses of up to $3,336,735, a substantial amount, and Aura's violations involved fraud or deceit.

Any civil penalty is to be determined by the Court "in light of the facts and circumstances" of the particular case.  15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(b)(I).  Factors courts have considered include the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading; and the deterrent effect given the defendant's financial worth.  *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001); *see also SEC v. One Wall Street, Inc.*, No. 06-CV-4217(NGG)(ARL), 2008 WL 63256, at *4 (E.D.N.Y. Jan. 3, 2008) ("In determining whether civil penalties should be imposed, and the amount of fine, courts

look to a number of factors, including: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.").

Based on the undisputed record in this case, there is no question that Aura's conduct involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" by causing hundreds of thousands in investor losses.  Therefore, upon consideration of all the factors, we agree with the Commission that a Third Tier penalty is warranted.  *In the Matter of Jay Houston Meadows*, Admin. Proc. File No. 3-8257, 1996 SEC LEXIS 1194 (May 1, 1996), *aff'd*, 119 F.3d 1219, 1228 (5th Cir. 1997) (the court noted the magnitude of investor losses (more than $600,000) in affirming a $100,000 penalty); *SEC v. Friendly Power Company LLC*, 49 F. Supp. 2d 1363 (S.D. Fla. 1999) (ordering a third-tier penalty because defendants' violation of securities laws created a substantial risk that investors would lose their investments); *SEC v. Rosenfeld*, No. 97CIV.1467WHPRLE, 2001 WL 118612, at *4 (S.D.N.Y. Jan. 9, 2001) (defendant's fraudulent scheme to inflate value of stock and distribute unregistered stock caused more than $12 million in losses to investors and justified Court imposing third tier penalty of more than $12 million); *SEC v. Manterfield*, No. 07-10712-RGS, 2009 WL 935953, at *3 (D. Mass. Apr.

8, 2009) (defendant assessed $130,000 in civil penalty where his ill-gotten gains exceeded $2,300,000).

In addition to the fact that Aura's conduct created a substantial risk of loss to investors, its conduct was not an isolated occurrence, and instead took place repeatedly over an extended period of time. A significant Third Tier penalty is called for on this record. And as Aura has not objected or shown any reason to reduce the penalty due based on its financial condition, the appropriate penalty should not be reduced based on that financial condition.

Finally, we agree with the Commission that the Court should also impose a penalty against Aura as a deterrent to others against violating the securities laws, an important factor to consider in assessing an appropriate civil penalty:

> A monetary penalty is designed to serve as a deterrent against securities law violations. *See SEC v. Palmisano,* 135 F.3d 860, 866 (2d Cir.1998); *SEC v. Tanner,* 02 Civ. 306, 2003 WL 21523978, *2 (S.D.N.Y. July 3, 2003); *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y. 1996). As set forth in H.R. Report No. 616--the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act, "[T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations other than insider trading . . . Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud . . . . The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator . . . ."

*SEC v. Lybrand,* 281 F. Supp. 2d 726, 729-30 (S.D.N.Y. 2003) (citations omitted).

In sum, all the relevant factors in this record support the maximum civil penalty allowable for Third Tier violations. A penalty in that sum here would represent

approximately twice the amount of the ill-gotten gains obtained by Aura through these fraudulent transactions, which is certainly an appropriate measure for a penalty such as this. Any lesser penalty, given the extent of the fraud, would not meaningfully represent an adequate deterrent under the circumstances.

Accordingly, we recommend that a single $650,000 civil penalty be imposed in this case.

### III.   CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that:

Plaintiff's Motion for Final Judgment Ordering Injunctive Relief, Disgorgement, Prejudgment Interest, and a Civil Penalty Against Aura Financial Services, Inc. [D.E. 80] be **GRANTED**. Final Judgment should be entered in favor of Plaintiff and against Defendant Aura Financial Services, Inc. in the form of the proposed order submitted with the motion, also attached to this Report, that permanently enjoins Rapaglia from violating the federal securities laws charged in the Complaint and orders disgorgement of $348,837, plus prejudgment interest in the amount of $15,318.83, together with a one-time civil penalty of $650,000.00.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996

F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988);

*Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C.

§ 636(b)(1).

  **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 14th day of

July, 2010.

         /s/ *Edwin G. Torres*
        EDWIN G. TORRES
        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case Number:  09-CIV-21592-MORENO**

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

AURA FINANCIAL SERVICES, INC.,
RONALD E. HARDY, JR.,
PETER C. DUNNE,
QAIS R. BHAVNAGARI,
DIPIN MALLA,
SANDEEP SINGH, and
RAYMOND RAPAGLIA,

        Defendants.
_____/

**PROPOSED
FINAL JUDGMENT AS TO DEFENDANT AURA FINANCIAL SERVICES, INC.**

THE COURT has considered Plaintiff's Motion for Final Judgment Ordering Injunctive

Relief, Disgorgement, Prejudgment Interest and a Civil Penalty Against Aura Financial Services,

Inc. and supporting brief and exhibits, and the pertinent portions of the record, and is otherwise

fully advised in the premises.  Accordingly,

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

  (a)  to employ any device, scheme, or artifice to defraud;

  (b)  to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

  (c)  to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

  (a)  to employ any device, scheme, or artifice to defraud;

  (b)  to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

  (c)  to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

2

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant
is liable for disgorgement of $348,837, representing profits gained as a result of the conduct
alleged in the Complaint, together with prejudgment interest thereon in the amount of
$11,772.09, and a civil penalty in the amount of $_____ pursuant to Section 20(d) of the
Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §
78u(d)(3)].  The Commission may enforce the Court's judgment by moving for civil contempt
(and/or through other collection procedures authorized by law) at any time after ten days
following entry of this Final Judgment.  In response to any such civil contempt motion by the
Commission, the defendant may assert any legally permissible defense.  Payments under this
paragraph shall be made to the Clerk of this Court, together with a cover letter identifying Aura
Financial Services, Inc. as a defendant in this action; setting forth the title and civil action
number of this action and the name of this Court; and specifying that payment is made pursuant
to this Final Judgment.  Defendant shall simultaneously transmit photocopies of each such
payment and letter to the Commission's counsel in this action.  By making this payment,
Defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part
of the funds shall be returned to Defendant.  Defendant shall pay post-judgment interest on any
delinquent amounts pursuant to 28 USC § 1961.

The Clerk shall deposit the funds into an interest bearing account with the Court Registry
Investment System ("CRIS") or any other type of interest bearing account that is utilized by the
Court.  These funds, together with any interest and income earned thereon (collectively, the
"Fund"), shall be held in the interest bearing account until further order of the Court.  In

3

accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative

Office of the United States Courts, the Clerk is directed, without further order of this Court, to

deduct from the income earned on the money in the Fund a fee equal to ten percent of the income

earned on the Fund.   Such fee shall not exceed that authorized by the Judicial Conference of the

United States.

        The Commission may by motion propose a plan to distribute the Fund subject to the

Court's approval.  Such a plan may provide that the Fund shall be distributed pursuant to the Fair

Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  Regardless of whether

any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to

this Judgment shall be treated as penalties paid to the government for all purposes, including all

tax purposes.  To preserve the deterrent effect of the civil penalty, Defendant shall not, after

offset or reduction of any award of compensatory damages in any Related Investor Action based

on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it

further benefit by, offset or reduction of such compensatory damages award by the amount of

any part of Defendant's payment of a civil penalty in this action ("Penalty Offset").  If the court

in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days

after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this

action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund,

as the Commission directs.  Such a payment shall not be deemed an additional civil penalty and

shall not be deemed to change the amount of the civil penalty imposed in this Judgment.  For

purposes of this paragraph, a "Related Investor Action" means a private damages action brought

against Defendant by or on behalf of one or more investors based on substantially the same facts

as alleged in the Complaint in this action.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

V.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _____, 2010

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

5